UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| PATRICK J. AND JENNIFER O'CONNELL, | ) ) ) |
| Plaintiffs, | ) ) Case No. _____ |
| v. | ) ) *Electronically Filed* |
| PURSUIT, LLC, | ) ) ) |
| Serve: Kevin Asbury<br>P.O. Box 21596<br>Louisville, Kentucky 40221 | ) ) ) ) |
| PRIMERITUS FINANCIAL SERVICES, INC., | ) ) ) |
| Serve: Corporation Service Co.<br>2908 Poston Ave.<br>Nashville, Tennessee 37203 | ) ) ) ) |
| AARON DANIELS, | ) ) |
| Serve: Officer Aaron Daniels<br>303 Main Street<br>Shelbyville, Kentucky 40065 | ) ) ) ) |
| and | ) ) |
| KYLE AUSTIN, | ) ) |
| Serve: Officer Kyle Austin<br>303 Main Street<br>Shelbyville, Kentucky 40065 | ) ) ) ) |
| Defendants. | ) |

**COMPLAINT**

## INTRODUCTION

1. This action is brought pursuant to the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6), 42 U.S.C. § 1983, the Kentucky Consumer Protection Act ("KCPA"), KRS 376.220, and Kentucky common law for an unlawful repossession that breached the peace with use of law enforcement officers and failure to timely return the vehicle.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiffs Patrick J. O'Connell and Jennifer O'Connell are residents of Simpsonville, Kentucky, Shelby County, are "consumers" as that term is defined by the FDCPA and KCPA, and at all times relevant to the subject transaction used the goods for primarily personal, family and household use.

3. Defendant, Pursuit, LLC ("Pursuit") is a Kentucky limited liability company registered to do business in the Commonwealth, has a principal place of business in Louisville, Kentucky, is affiliated with Primeritus Financial Services, Inc., is a repossession agent enforcing security agreements, is a "debt collector" as that term is defined by the FDCPA because its primary purpose is the collection of debts.

4. Defendant Primeritus Financial Services, Inc. ("Primeritus") is a Tennessee corporation that does business in Kentucky and otherwise has sufficient contacts with the Commonwealth to establish jurisdiction over the acts complained of in this Complaint.

5. Defendant Aaron Daniels is a Kentucky resident and a policeman with the City of Shelbyville Police Department.

6. Defendant Kyle Austin is a Kentucky resident and a policeman with the City of Shelbyville Police Department.

7. The conduct described in this action occurred primarily within Shelby County, Kentucky.

8. Jurisdiction is proper pursuant to 28 U.S.C § 1331, as this case is brought pursuant to federal law. This Court has ancillary jurisdiction over the O'Connells' state law claims pursuant to 28 U.S.C § 1367 because the claims arise out of the same basic facts which give rise to the principal federal claim.

## STATEMENT OF FACTS

9. On July 13, 2013, the O'Connells bought a 2011 Ford Super Duty from Cox Chevrolet Inc., in Bradenton, Florida, after an exhaustive on-line search.

10. The O'Connells financed the vehicle, at the recommendation of its seller, through SunTrust Financial.

11. The truck was purchased for personal, family, and household use.

12. In the fall of 2016, the O'Connells experienced a patch of severe financial distress, and had fallen behind on a few loans, including their loan with Sun Trust.

13. In early October 2016, Ms. O'Connell reached out to SunTrust Financial to make arrangements to catch up late payments.

14. On October 25, 2016, Mr. O'Connell was at O'Reilley Auto Parts in Shelbyville, where he purchased supplies for his construction business and farm on a regular basis.

15. While he was checking out, a repossession agent from Pursuit pulled a white tow truck up behind the subject Ford parked in the lot and blocked the O'Connells' truck.

16. Pursuit was contracted by Primeritus to repossess the vehicle, as directed by SunTrust.

17. Mr. O'Connell, who had been warned of the tow truck by an O'Reilly employee, made his way to the parking lot to speak with both agents of Pursuit about his wife's conversation with SunTrust and the fact that he was on his way to make a loan payment.

18. Pursuit's employee and agent Ronnie Garwood spoke to Mr. O'Connell while Pursuit's employee and agent Robert Medlin remained in the tow truck.

19. Mr. Garwood advised Mr. O'Connell they had an order to take his Ford.

20. Mr. O'Connell orally refused to allow Pursuit's agents to take his vehicle immediately upon beginning the discussion.

21. When Mr. O'Connell refused, Mr. Medlin got on his cell phone and placed a call.

22. Mr. O'Connell opened his truck door, got into the driver's seat, locked the doors, and refused to allow Pursuit's agents to take his vehicle.

23. At no time did Mr. O'Connell raise his voice, conduct himself in an inappropriate manner, or otherwise cause a scene to supplement the scene already caused by Pursuit's agents.

24. Shortly thereafter, Deputy Scott Clemmons from the Shelby County Sheriff's Office arrived and engaged in a discussion with Pursuit's agents behind the truck.

25. Mr. O'Connell franticly called and texted his wife about what was happening and to ask for the latest from her discussions with Sun Trust. But Ms. O'Connell was attending a conference and was unable to take the calls.

26. When she spoke with him later in the day, she could hear how upset and frustrated Mr. O'Connell was with the way he had been treated.

27. Deputy Clemmons, after a conference with the agents of Pursuit, knocked on Mr. O'Connell's window, told him that Pursuit had an "Order," and they would be taking the truck.

28. Mr. O'Connell asked if it was a Court Order. Deputy Clemmons said that it was a Court Order.

29. Mr. O'Connell told the officer that Pursuit agents were breaching the peace, that he had not seen a Court Order, and asked the Deputy for a copy of the Order. The Deputy ignored his request.

30. Mr. O'Connell called Sun Trust bank, and was making arrangements to have the money wired to SunTrust, Officers Aaron Daniels and Kyle Austin from the Shelbyville Police Department arrived.

31. The Officers conferred with the Sheriff's Deputy and the Pursuit agents, and then Officer Daniels approached Mr. O'Connell.

32.    Officer Daniels instructed Mr. O'Connell to get out of the truck so that Pursuit could take it.

33.    Mr. O'Connell told the Officer he had not seen the Court Order, asked to see it, and repeated that Pursuit was breaching the peace based on his refusal.

34.    Officer Daniels walked back to the tow truck. After Pursuit agents, the Officers, and Deputy spoke further, Deputy Clemmons left the scene.

35.    Officer Daniels returned to the Ford's window, told Mr. O'Connell he was causing problems, and said that Pursuit would be allowed to take the truck or that Mr. O'Connell would be arrested for his failure to cooperate with the unlawful repossession.

36.    Mr. O'Connell, under threat of arrest for asserting his rights to object to repossession, exited the Ford.

37.    The Officer then advised Mr. O'Connell that Pursuit now had legal possession of the truck, that he would need to get a ride home, and instructed him to not cause any more trouble.

38.    Mr. O'Connell walked away from the truck to call for a ride, and as he stood there on the phone, watched Officer Daniels search the interior of his truck.

39.    When he walked back to his Ford to retrieve personal items, the Officer and the Pursuit agents blocked him from the door. Officer Daniels warned him to not do anything "stupid."

40.    Mr. O'Connell asked who he could call after his payment to Sun Trust posted in an hour, and was given two different numbers by the Pursuit agents.

41. Neither Pursuit nor the officers told him the address of the lot where the truck was to be taken.

42. As Officer Daniels continued to stand between Mr. O'Connell and the Ford's door, Mr. Garwood got into the truck and drove it away.

43. Within the hour, Mr. O'Connell was picked up, taken to Kroger, the money was wired to SunTrust, and the loan was brought current.

44. Mr. O'Connell called the numbers given him by Pursuit agents, one of which was a wrong number, and spoke to someone who identified himself as "Adam." This person advised Mr. O'Connell that he had not received a release for the truck. Mr. O'Connell asked him to call back when it arrived.

45. No one returned his call that evening.

46. The O'Connells called Pursuit many times throughout the evening and the next morning, but no one ever answered.

47. Mr. O'Connell called SunTrust to find out what he needed to do to get his truck back, and spoke to the same agent who had processed the payment the night before.

48. The SunTrust agent gave him another number to try to reach Pursuit, and advised Primeritus, the original agent who had been contracted by SunTrust, was also trying to reach them to arrange for return of the truck.

49. Mr. O'Connell called the number he was given. "Adam" answered, was highly agitated that Mr. O'Connell called his cell phone, and demanded to know where Mr. O'Connell obtained this number.

7

50. Mr. O'Connell told Adam that SunTrust released his truck the night before, and he asked where he could pick it up.

51. Adam said there was no release, there might not be one for weeks, swore at Mr. O'Connell, threatened him that "he knew all about him from the guys," and said he would be filing charges. He threatened to "kick his ass" if he showed up at the lot in Shelbyville.

52. After Pursuit failed to return the vehicle, Mr. O'Connell called SunTrust back and told them again he was not successful in obtaining his truck from the repossession agents.

53. He was advised that someone would be "taking care of it."

54. Mr. O'Connell called the Shelbyville Police Department to advise them of the situation, and left a message with the assistant to the chief.

55. Adam called Mr. O'Connell back and stated that he needed to be at the Shelbyville Police Department to pick up his truck.

56. Right before 2:00 p.m., Mr. O'Connell arrived at the Police Department with his father and three children, having been unable to work or do anything that day but try to retrieve his truck.

57. When he arrived at the Shelbyville Police Department, he asked to speak to the Chief, as he wanted to file a complaint against the officers who had assisted with the unlawful repossession.

58. Major Kovacs spoke with Mr. O'Connell, advised him that the officers in question had body cameras on, that he would get the videos to see what Mr. O'Connell, and that if he filed a report, he would be arrested and charged with filing false reports.

59. Soon after the Major refused to accept Mr. O'Connell's complaint, Mr. Medlin showed up with the Ford and paperwork for Mr. O'Connell to sign.

60. Mr. O'Connell looked over the paperwork, which included a waiver and release of liability, which he staunchly refused to sign.

61. Mr. Medlin then called Adam, and Mr. O'Connell called SunTrust, who advise that there were no conditions to picking up his truck, that he did not need to sign the waiver to get his truck.

62. The Major threatened to impound the truck if Mr. O'Connell did not sign the paperwork.

63. Mr. O'Connell again asked for the Complaint forms for the officers, he was ignored, and everyone went their separate ways.

64. Ms. O'Connell filed an Open Records Request to gather the body camera footage, but was told that it did not exist.

65. When Mr. O'Connell inspected the truck upon its return, he noticed a dent in the door, that someone had broken into a toolbox in the truck, and that two of the toolbox handles were inoperable.

66. The locks were not repairable and had to be replaced.

67. As a result of Defendant's unlawful conduct, the O'Connells have suffered damages in an amount to be determined at trial.

## COUNT ONE:
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f(6)
### (PURSUIT AND PRIMERITUS)

68. The O'Connells incorporate by reference the allegations previously set forth in this Complaint.

69. The actions taken by Pursuit and Primeritus constitute an unlawful repossession that breached the peace, both in their actions and involvement with the law enforcement officers on the scene, in violation of the FDCPA.

70. The Fair Debt Collections Practices Act at 15 U.S.C. § 1692f(6) prohibits repossession agents from engaging in unlawful acts when enforcing security agreements of lenders.

71. After Mr. O'Connell refused to allow the repossession, and verbally and physically opposed the removal of the truck by Pursuit, the agent contracted by Primeritus, all further acts to effect repossession were unlawful.

72. Pursuit and Primeritus's conduct caused the O'Connells to sustain actual damages in the form of mental and emotional distress, turmoil, worry, stress, and anxiety, entitling them to the recovery of actual damages.

73. The O'Connells are further entitled to statutory damages of $1,000 and attorney fees pursuant to 15 U.S.C. § 1692k.

## COUNT TWO:
## VIOLATIONS OF THE KPCA
## (PURSUIT AND PRIMERITUS)

74. The O'Connells incorporate by reference the allegations previously set forth in this Complaint.

75. By advising the O'Connells that there was an Order for repossession signed by a Judge when there clearly was no such Order, and by breaching the peace during their repossession, Pursuit and Primeritus engaged in unfair, false, deceptive and misleading conduct in a trade or commerce prohibited by KRS 376.170.

76. Pursuit and Primeritus's conduct caused the O'Connells to sustain actual damages in the form of mental and emotional distress, turmoil, worry, stress, and anxiety, entitling them to the recovery of actual damages.

77. Pursuit and Primeritus's conduct was oppressive, fraudulent and malicious, as those terms are used in KRS 411.184.

78. Plaintiffs are entitled to recover their actual damages, punitive damages, and attorney's fees for the violation by the Defendants, pursuant to KRS 367.220.

## COUNT THREE: CONVERSION
## (PURSUIT)

79. The O'Connells incorporate by reference the allegations previously set forth in this Complaint.

80. The O'Connells maintained legal title to the truck and, once they paid Suntrust, they had a right to possession of the truck.

81. Pursuit exercised unlawful dominion over it when the truck was not timely returned, thus impeding Plaintiffs possession.

82. The O'Connells' demand for return was ignored, and they were therefore damaged.

83. Pursuit's conduct was oppressive, fraudulent and malicious, as those terms are used in KRS 411.184.

84. Plaintiffs are entitled to actual and punitive damages due to Pursuit's wrongful conversion.

### COUNT FOUR: NEGLIGENCE PER SE
### (PURSUIT)

85. The O'Connells incorporate by reference the allegations previously set forth in this Complaint.

86. Pursuant to KRS 355.9-609(2)(b), a secured party may take possession after default without judicial process only if it proceeds without a breach of the peace.

87. Pursuit violated this Uniform Commercial Codes provisions for orderly repossession and, consequently, committed negligence per se.

88. As a result of Pursuit's violation of KRS 355.9-609(20(b), Plaintiff suffered harm and are entitled to recover pursuant to KRS 446.070.

### COUNT FIVE: 42 U.S.C. § 1983
### (OFFICERS DANIELS AND AUSTIN)

89. The O'Connells incorporate by reference the allegations previously set forth in this Complaint.

90. Officers Daniels and Austin had no warrant or valid Court Order to seize the O'Connells' vehicle.

91. At the time of these Officers' conduct, it was clearly established that the Fourth Amendment to the United States Constitution allows a police officer to seize property only when there is a valid warrant, court order or probable cause along with a valid exception to the warrant requirement by participating in a vehicle repossession which was itself unlawful.

92. The O'Connells' Fourth Amendment rights were sufficiently clear that a reasonable officer would understand that participating in a motor vehicle repossession in breach of the peace without warrant, court order or probable cause would violate the O'Connells' rights.

93. Under color of law, these Defendants meaningfully interfered with the O'Connells' possessory interests in their truck and, consequently, unlawfully seized the O'Connells' property.

94. This conduct interfered with the O'Connells property rights and further caused them to sustain actual damages in the form of mental and emotional distress, turmoil, worry, stress, and anxiety.

95. In addition to compensatory damages, expenses, and court costs, the O'Connells are entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

Wherefore, the O'Connells request that this Court:

    a.    Entry of judgment to compensate the O'Connells for damages to which they are entitled, including, but not limited to, actual, compensatory, statutory, and punitive damages;

    b.    Interest on these amounts at the maximum rate and for the maximum duration allowed by applicable law;

    c.    Trial by jury on all issues so triable;

    d.    An award of attorney's fees and costs herein incurred; and,

    e.    Any other relief to which Plaintiff may be entitled, including the right to amend this Complaint to add additional claims or additional parties after conducting appropriate discovery.

Respectfully Submitted;

/s/Stefanie Ebbens Kingsley_____
**STEFANIE EBBENS KINGSLEY LAW**
100 N Main Street, Suite 300
Corbin, Kentucky  40701
(606) 260-2565 P
(606) 656-0805 F
stefanie@sek-law.com

and

**CRAIG HENRY PLC**
JAMES CRAIG

/s/James Craig_____
239 South Fifth Street, Suite 1400
Louisville, Kentucky  40202
(502) 614-5962 P
(502) 614-5968 F
jcraig@craighenrylaw.com

*Co-Counsel for Patrick J. and Jennifer O'Connell*

## VERIFICATION

I hereby verify that the foregoing is true and correct to the best of my knowledge and belief on this 25 day AUGUST, 2017

*Patrick J. O'Connell Jr.*

COMMONWEALTH OF KENTUCKY
COUNTY OF __Jefferson__

The foregoing was subscribed and sworn to before me by PATRICK O'CONNELL on this 25 day AUGUST, 2017.



Monica Anderson
NOTARY PUBLIC
MY COMMISSION EXPIRES: 6/11/2018

## VERIFICATION

I hereby verify that the foregoing is true and correct to the best of my knowledge and belief on this 25 day AUGUST, 2017

*Jennifer O'Connell*
JENNIFER O'CONNELL

COMMONWEALTH OF KENTUCKY
COUNTY OF __Jefferson__

The foregoing was subscribed and sworn to before me by JENNIFER O'CONNELL on this 25 day AUGUST, 2017.

Monica Anderson
Notary Public, ID No. 511240
State at Large, Kentucky
My Commission Expires on 6/11/2018

Monica Anderson
NOTARY PUBLIC
MY COMMISSION EXPIRES: 6/11/2018