UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

*ELECTRONICALLY FILED*

| | |
|---|---|
| PATRICK J. and JENNIFER O'CONNELL ) ) PLAINTIFFS ) ) v. ) ) PURSUIT, LLC, PRIMERITUS FINANCIAL SERVICES, INC., AARON DANIELS, and KYLE AUSTIN ) ) ) ) ) DEFENDANTS ) | Civil Action No. 3:17-cv-00067-GFVT |

## DEFENDANTS PURSUIT, LLC AND PRIMERITUS FINANCIAL SERVICES, INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

\* \* \* \* \*

Come Defendants, Pursuit, LLC ("Pursuit," or collectively with Primeritus Financial Services, Inc. "Defendants") and Primeritus Financial Services, Inc. ("Primeritus," or collectively with Pursuit, "Defendants") and for their Response to Plaintiffs' Motion for Partial Summary Judgment state as follows:

### I. INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment is based exclusively on the facts surrounding the subject repossession of October 25, 2016. Their claims for violations of the Fair Debt Collection Practices Act ("FDCPA") and KRS 355.9-609 (Kentucky's self-help repossession statute) are dependent on whether Defendants breached the peace during this repossession. As such, the sequence of events during the repossession is determinative of their claims. Fatal to their Motion for Partial Summary Judgment, however, is that these facts are in

dispute based upon the evidentiary record. Because there exists a genuine issue of material fact as to whether a breach of the peace occurred, Plaintiff's Motion for Partial Summary Judgment must be denied.

## II.  STATEMENT OF FACTS

On October 25, 2016, it is undisputed that Plaintiffs' vehicle was repossessed while parked at an O'Reilly's Auto Parts store parking lot (a public area) in Shelbyville, Kentucky.[1] On that date, Robert Medlin ("Medlin"), a repossession agent for Pursuit, while en route to another repossession, observed Plaintiffs' Ford 450 in the O'Reilly's lot. Medlin then contacted the Shelbyville Police Department to act as a witness to the repossession.[2] Medlin was concerned that Patrick O'Connell (who admits to having a reputation as a hot head and having a bad temper)[3] would give a false account of the repossession events and wanted witnesses to protect against same.[4] Medlin, however, adamantly denies that he requested the police department to assist in the repossession.[5] Similarly, Ronnie Garwood ("Garwood"), who was with Medlin during the repossession, denies that the police were called or requested on scene to assist.[6] Officers Aaron Daniels ("Officer Daniels") and Kyle Austin ("Officer Austin"), who responded to the O'Reilly's parking lot, testified that they were never requested to assist in the repossession and that they, in fact, did not assist in the repossession.[7] This was confirmed by

---

[1] Plaintiffs' verified Complaint, DN1, at ¶14.
[2] *See* Robert Medlin deposition, collectively attached as **Ex. A,** at 35:4-8.
[3] *See* Patrick O'Connell deposition, collectively attached as **Ex. B,** at 195:5-14.
[4] Robert Medlin deposition at 62:24-63:4 and Ronnie Garwood's June 11, 2018 deposition, attached collectively as **Ex. C,** at 18:6-8.
[5] *Id.* at 55:21-56:5 and 62:3-9.
[6] *See* Ronnie Garwood June 11, 2018 deposition at 38:13-19.
[7] *See* Officer Aaron Daniels' deposition, attached collectively as **Ex. D,** at 81:7-20 and Officer Kyle Austin's deposition, attached collectively as **Ex. E,** at 38:23-39:5.

Major Bruce Gentry's written deposition answers which stated that "[n]o specific request for assistance was made."[8]

After Medlin and Garwood pulled their tow truck behind Plaintiffs' vehicle, Mr. O'Connell came out of the O'Reilly's store about one to two minutes later.[9] Per Medlin, the following exchange occurred:

> Q: What did he do as he walked up to his truck?
> A: He asked me if I was there to get his truck, I said, "Yes." He said, "F no, not today," and then after that, everything was fine. We talked, I told him I had a repossession for the truck and he wanted to make a call to SunTrust. He made a phone call to SunTrust.
> Q: So you just made the statement that, "Everything was fine."
> A: Uh-huh.
> Q: What do you mean by everything was fine?
> A: Well, there was no other cuss words, there was no fighting, there was nothing like that.
> Q: Okay. So nobody raised their voice?
> A: No, not after the first initial deal. I mean, everybody was calm.
> Q: And so one cuss word only, and then what did Mr. O'Connell do after that?
> A: He wanted a chance to call SunTrust; I said "That's fine. I could wait here, he could call SunTrust and try to get things resolved."[10]
>
> * * * * * *
>
> Q: Okay. And after that conversation finished, what did Mr. O'Connell do?
> A: He went to his truck and got on the phone and was, I guess, supposedly calling SunTrust Bank; that's what he asked to do.[11]

Garwood also testified that upon Mr. O'Connell's exit from the O'Reilly's store, he asked what they were doing and then got on the phone.[12] That is, Garwood does not recall Mr. O'Connell verbally protesting the repossession.

---

[8] *See* Responses of Bruce Gentry to Deposition on Written Questions, attached as **Ex. F.**
[9] Robert Medlin deposition at 28:16-21.
[10] *Id.* at 28:22-29:17.
[11] *Id.* at 29:25-30:4.

3

Mr. O'Connell confirmed during his deposition that after getting in his vehicle, he did not attempt to leave the scene; he did not even turn on his vehicle.[13] Instead, he called his wife, attorney and SunTrust twice.[14] Per Mr. O'Connell, the entire repossession took 45 minutes;[15] per the CAD report from the Shelbyville Police Department, they were on scene 34 minutes (from 3:18 p.m. to 3:57 p.m.).[16] According to Mr. O'Connell's phone records, he was on the phone for 22 of the 34 minutes; 16 of these minutes were with SunTrust.[17] This was confirmed by Officer Daniels' testimony that Mr. O'Connell was on his phone the majority of time that he was on scene.[18]

Mr. O'Connell explained the sequence of events after he got in his vehicle and began making phone calls as follows:

- Sheriff's Deputy Clemmons arrived on scene and approached his vehicle shortly after he had gotten inside and started making phone calls.[19]

- Mr. O'Connell rolled down his window and Sheriff Clemmons asked him what was going on. Mr. O'Connell stated, "you know what they're here for, so—can he said they have an order for my truck, and I asked him specifically, I said, well, the—they don't have a court order, and he said, yes, they do."[20] Mr. O'Connell explained that he knew they needed a court order because he's "been through the legal system enough" to "know how it works."[21]

---

[12] Ronnie Garwood June 11, 2018 deposition at 18:3-13.
[13] Patrick O'Connell deposition at 109:24-110:2.
[14] *Id.* at 118:7-120:13.
[15] *Id.* at 263:9-16.
[16] *See* CAD report attached as **Ex. G.**
[17] *See* Patrick O'Connell's October 25, 2016 phone records attached as **Ex. H.**
[18] Officer Daniels deposition at 60:16-22.
[19] Patrick O'Connell deposition at 107:13-15; 109:12-110:7; and 112:13-21.
[20] *Id.* at 110:6-14.
[21] *Id.* at 110:15-18.

4

- Mr. O'Connell then asked to see the order and Sheriff Clemmons "walked off."[22]

- About 10 minutes later Officers Daniels with the Shelbyville Police Department approached Mr. O'Connell's vehicle and asked what's going on. Mr. O'Connell told Officer Daniels that he had yet to see the order of repossession and "[t]hat was the extent of that. He walked away."[23]

- While sitting in his vehicle Mr. O'Connell spoke to a representative of SunTrust who confirmed that the vehicle was placed in repossession and the loan needed to be brought current via cash transfer with Western Union.[24]

- Mr. O'Connell claims he was approached a second time by Officer Daniels who he claims ordered him out of the truck under threat of arrest.[25]

- **Mr. O'Connell then got out of his vehicle and walked to the bed of his truck where he was shown the order of repossession**.[26]

- **Mr. O'Connell tried to call SunTrust again to see if he could make an alternative form of payment, but was told it was "Western Union or nothing."**[27]

- While Mr. O'Connell was talking to the bank, no one tried to get in his vehicle. It was only after it was confirmed that Mr. O'Connell could not make his loan current that he claims Officer Daniels told him that he needed to get a ride.[28]

- Mr. O'Connell walked away to call his mom to "come up there" and Garwood got into the driver's seat of his vehicle.[29]

---

[22] *Id.* at 112:6-8.
[23] *Id.* at 116:23-117:6.
[24] *Id.* at 120:11-121:8.
[25] *Id.* at 117:7-118:6.
[26] *Id.* at 125:11-126:9.
[27] *Id.* at 126:13-127:19.
[28] *Id.* at 128:8-129:20.
[29] *Id.* at 130:3-16.

5

In direct contradiction to Mr. O'Connell's version of events, per Officer Daniels, he only approached Mr. O'Connell's vehicle one time.[30] However, because Mr. O'Connell was on the phone, he would not engage in conversation with Officer Daniels. Per Officer Daniels:

> A: I believe I walked to Mr. O'Connell's window.
> Q: Okay. Tell me what you saw when you approached the side of Mr. O'Connell's truck.
> A: He was on the phone.
>
> * * * * *
>
> Q: Did he stop to communicate with you?
> A: I don't believe so. The only thing I remember is him saying, "I've got it worked out with my bank."[31]
>
> * * * * *
>
> Q: Okay. So you're not able to engage in a dialogue with Mr. O'Connell while you're standing next to his tuck initially, correct?
> A: Correct.[32]

Mr. O'Connell admits that Officer Kyle Austin, who was with Officer Daniel that day never interacted with him.[33]

In further contradiction of Mr. O'Connell's version of events, both Garwood and Officer Daniels testified that after initially getting in his vehicle, Mr. O'Connell got out of his vehicle and paced around.[34] When he walked to the other end of the parking lot, Garwood got into the driver's seat of the vehicle.[35] Officer Daniels denies that he ever told Mr. O'Connell to get out

---

[30] Officer Daniels deposition at 52:2-15 and 57:20-24.
[31] *Id.* at 52:2-14.
[32] *Id.* at 53:20-23.
[33] Patrick O'Connell deposition at 214:11-13.
[34] Officer Daniels deposition at 57:14-16 and Ronnie Garwood January 11, 2018 deposition at 18:10-21 and 23:6-17.
[35] Officer Daniels deposition at 58:21-24 and Ronnie Garwood June 11, 2018 deposition at 23:12-23.

of the truck, to call someone for a ride, or that the truck was Pursuit's now.[36] He and Officer Austin further deny ever threatening Mr. O'Connell with arrest.[37]

Both Medlin and Garwood testified that the officers never assisted in the repossession.[38] Officer Daniels confirmed this testimony, advising that this was a civil matter and, as a police officer, he could do nothing about it but observe.[39] Medlin also never heard any of the officers threaten Mr. O'Connell with arrest.[40] In fact, Medlin only heard Sheriff Deputy Clemmons tell Mr. O'Connell that the repossession order was legitimate; he never saw any other officers approach Plaintiff.[41] Likewise, he never saw the officers reach for a gun, threaten Mr. O'Connell with a gun, or get in his personal space.[42] Officer Daniels testified that neither he nor Officer Austin threatened Mr. O'Connell or got in his personal space.[43] This was confirmed by Officer Austin.[44]

Neither Medlin nor Garwood ever threatened Mr. O'Connell or got in his personal space.[45]

### III.  ARGUMENT

Plaintiffs move for summary judgment of their claims in Count I (Violation of the FDCPA, 15 U.S.C. §1692(f)) and Count IV (Negligence *Per Se* for violation of KRS 355.9-609(2)(b)) of the Complaint. Their Motion for Partial Summary Judgment is premised solely on the argument that there exists no genuine issue of material fact that Defendants breached the peace during the subject repossession. As properly cited in Plaintiffs' motion, a violation of the

---

[36] Officer Daniels deposition at 59:1-8.
[37] *Id.* at 85:15-18 and Officer Austin deposition at 45:19-46:1.
[38] Robert Medlin deposition at 62:7-9 and Ronnie Garwood June 11, 2018 deposition at 38:20-22.
[39] Officer Daniels deposition at 48:15-22.
[40] *Id.* at 66:11-17.
[41] Robert Medlin Deposition at 38:11-39:9 and 45:12-14.
[42] *Id.* at 66:23-67:6.
[43] Officer Daniel deposition at 85:19-86:11.
[44] Officer Austin deposition at 44:14-24.
[45] Robert Medlin deposition at 66:18-20 and 67:7-14.

FDCPA is dependent upon whether a violation of the state self-help repossession statute occurred. Thus, state law applies. Contrary to Plaintiffs' contentions, however, Kentucky does not recognize the mere presence of law enforcement at the scene of a repossession as a breach of peace. Instead, there must be some proof that the officer assisted, enabled, carried out or sanctioned the repossession for a breach to occur. As argued below, there remains a question of fact as to this issue. For this reason, Plaintiffs' motion must be denied.

### A. Applicable Law

Repossession agents do not fall under the definition of a "debt collector" under the FDCPA except for the purposes of 15 U.S.C. §1692f(6).[46] This portion of the act holds:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section…
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>   (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>   (B) there is no present intention to take possession of the property; or
>   (C) the property is exempt by law from such dispossession or disablement.[47]

Courts that are presented "with the issue of determining whether a repossession agency has violated §1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a security interest does not have a present right to the collateral at issue."[48]

---

[46] *Montgomery v. Huntington Bank,* 346 F.3d 693, 699-700 (6th Cir. 2003).
[47] 15 U.S.C. §1692f.
[48] *Alexander v. Blackhawk Recovery & Investigation, LLC,* 731 F. Supp. 2d 674, 679 (E.D. Mich. 2010).

8

KRS 355.9-609 is Kentucky's self-help repossession statute. It holds that a secured party may take possession of collateral after default pursuant to (1) judicial process or (2) "without judicial process, if it proceeds without breach of the peace."[49] Breach of the peace is not defined by the statute. Indeed, the Official Commentary to this statute provides in relevant part, "this section does not define or explain the conduct that will constitute a breach of the peace, leaving this matter for continuing development by the courts."[50] This comment goes on to state, however, "[t]his section does not authorize a secured party who repossesses without judicial process to **utilize the assistance** of a law enforcement officer."[51]

There is no case law based upon Kentucky's current self-help repossession statute relating to breach of peace. Similarly, there is little case law defining breach of peace under Kentucky's former self-help repossession statute, KRS 355.9-503. Essentially, there have been two ways in which breach of peace has been found by the Kentucky courts: (1) repossessing collateral in the face of a "serious objection by the debtor" and (2) when "a police officer is carrying out or sanctioning the repossession" or enables the repossession over the debtor's objection.[52] To be clear, however, Kentucky does not hold that the mere presence of an officer at the repossession constitutes a breach of peace. Indeed, the *Henderson* court specifically held, "**[t]here [is] not constructive breach of peace caused by the mere presence of the deputy."[53] Likewise, "a mere verbal objection is insufficient to establish a breach of the peace."[54]**

Further, analysis of the case law demonstrates that a determination of whether an officer enabled, carried out, or sanctioned the repossession is a factually intensive analysis of what

---

[49] KRS 355.9-609(2).
[50] Official Comment 3 to KRS 355.9-609.
[51] *Id.* (emphasis added).
[52] *First & Farmers Bank v. Henderson,* 763 S.W.2d 137, 141 (Ky. App. 1988).
[53] *Id.* (emphasis added).
[54] *Id.* at 140 (emphasis added).

9

effect the officer's presence has on the repossession. In *Henderson, supra,* First and Farmer's Bank of Somerset, who had a valid security interest in a speed boat in Plaintiff's possession, sought to repossess it from Plaintiff. Prior to arriving on scene, the bank's employees contacted the Pulaski County Sheriff's department to meet them at Plaintiff's home before they repossessed the boat.[55] Thus, the officer arrived with the bank employees to the home. The bank's employees then entered Plaintiff's property and hitched the boat, which was located inside Plaintiff's garage, to their vehicle.[56] Plaintiff came home during this process and blocked the bank employees with his vehicle from removing the boat from his property.[57] There was then a confrontation between the employees and Plaintiff which included a "clear and vehement verbal objection to the repossession by [Plaintiff]."[58] Plaintiff contended that it could have led to a physical conflict.[59] The deputy sheriff then got out of his vehicle and approached the parties. As a result, Plaintiff backed off, stating that he was going to call his attorney.[60] At this point, the bank employees "took the opportunity to flee the scene with the boat."[61]

Upon examining these facts and analyzing other states' case law regarding breach of peace, the Kentucky Court of Appeals opined that "**it is clear that unless the presence of the deputy negates the breach of the peace,** the directed verdict against the Bank was proper. **We are thus confronted with the novel issue of the <u>effect</u> of a peace officer on a self-help repossession.**"[62] The Court concluded that the evidence established that the effect of the

---

[55] *Id.* at 139.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.* at 140. (emphasis added).

officer's actions were "to override the debtor's right to object."[63] That is, the deputy sheriff "enabled the Bank to repossess over [Plaintiff's] objection," resulting in a breach of the peace.[64]

Similarly, whether a serious objection has occurred involves a factual analysis of the statements and circumstances surrounding the repossession. *See e.g. Henderson, supra,* at 139 and 141 (the Court determined that physically blocking a repossession agent from leaving one's property, coupled with a vehement verbal objection that almost leads to blows constitutes an objection) and *see e.g. National Bond & Investment Co. v. Whithorn,* 123 S.W.2d 263, 264-265 (Ky. App. 1938) (in this pre-Code decision, Plaintiff's actions of refusing to get out of his vehicle; starting the vehicle to drive off; vehement protests; throwing on the emergency brake and putting the car in reverse while hooked on the wrecker and thereby stalling the wrecker; and kicking the repossession agent in the shins resulted in a "repossession in the face of the debtor's objection constitut[ing] a breach of the peace.").[65]

### B. Plaintiffs Have Failed to Demonstrate that there is No Genuine Issue of Material Fact that Mr. O'Connell Seriously Objected to the Repossession or that the Officers Enabled, Carried Out, or Sanctioned the Repossession to Support their Claims of Breach of Peace.

There remain questions of material fact whether Mr. O'Connell seriously objected to the repossession and the effect the officers' presence had on the repossession. That is, based upon the evidentiary record, questions of material fact remain whether Mr. O'Connell allowed the repossession to take place over his purported objection because law enforcement was present. Accordingly, Plaintiffs cannot prevail on their motion for partial summary judgment.

First, it is clear from all testimony, including Mr. O'Connell's, that it was only after Mr. O'Connell failed in his attempts to work out a payment arrangement with the bank that the

---

[63] *Id.* at 141.
[64] *Id.*
[65] *Henderson, supra* at 140.

11

repossession occurred. Mr. O'Connell was on the phone for almost the entire time the agents and officers were on scene. He admits and his phone records demonstrate that he was talking to SunTrust bank in an effort to bring his loan current. It was only when he was told by SunTrust that it was "Western Union or nothing" that Pursuit took possession of the vehicle. In fact, Mr. O'Connell testified that even though he was told by Officer Daniels to get out of his truck or face arrest, he called SunTrust again to make payment arrangements while everyone stood around waiting. Thus, not only is there a question of fact as to the effect that law enforcement had on Mr. O'Connell at the repossession, but there appears to be more evidence in support of the fact that it was only after Mr. O'Connell realized the repossession was valid and he could not get caught up on his payments, that the repossession was effected.

Second, the officers' presence on scene had little to no effect on Mr. O'Connell. Mr. O'Connell claims to have first been approached by Deputy Clemmons who essentially asked what was going on. Because Mr. O'Connell claims to be familiar with the legal process, he asked the deputy to see the Court order for repossession. Deputy Clemmons then walked off and Plaintiff remained in his vehicle. That is, he didn't give up the vehicle because of Deputy Clemmons' presence. When Mr. O'Connell claims he was approached by Officer Daniels, who also asked what was going on, the same exchange occurred and Officer Daniels walked off. Again, Mr. O'Connell did not give up his vehicle based upon Officer Daniels' presence. The third interaction is in dispute; while Mr. O'Connell claims he was threatened with arrest, no other person on scene—and there were 4 others—ever saw or heard this exchange. In fact, Officer Daniels' specifically denies such an interaction or threat. Even still, as outlined above, this threat did not prompt Mr. O'Connell to allow the repossession; it was, instead, his failure to

work things out with his bank.  Indeed, after getting out of his truck, he continued to call the bank while everyone stood around.

Compare these facts to those in *Henderson.*  A close examination of that case reveals that it is only after the police officer interjected into the altercation that Plaintiff backed down from his objections and the bank took off with the boat.  There, the officer's presence had a chilling effect on the Plaintiff's ability to object, enabling the bank to repossess the boat.  That is, if not for the officer's presence, the repossession would not have been completed.  Here, the officers' presence did not stop Mr. O'Connell from continuing to call his bank to make arrangements or to ask for a copy of the repossession order.  Mr. O'Connell continued in his course of action of trying to keep possession of his truck by negotiating with his bank.  Indeed, the officers' presence did not seem to have any effect on Mr. O'Connell at all.

Third, Plaintiff's only objection to the repossession was his initial encounter with Medlin.  But, as Medlin explained in his deposition, after he told Mr. O'Connell that there was a valid order, he simply asked to call his bank.  When Mr. O'Connell got in his vehicle, Medlin properly assumed he did so as confirmed by Mr. O'Connell's deposition testimony and his phone records.  While Plaintiffs continuously refer to this event as a stand-off, contradictory evidence shows that Mr. O'Connell was making phone calls and everyone on scene allowed him to do so.  Moreover, Mr. O'Connell admits that he never turned his vehicle on and he made no efforts to leave the scene.  Further, there were no threats or foul language used; instead, Mr. O'Connell claims he acted as a gentlemen the entire time.  While there remains a dispute whether Mr. O'Connell got out of his vehicle pursuant to a demand by Officer Daniels or whether he was out of it pacing around, there is no dispute that Mr. O'Connell got out of his vehicle of his own accord before it was repossessed by Pursuit.

As demonstrated by the evidentiary record, while Mr. O'Connell may have made one verbal objection, a question of material fact remains whether he continued in his objections. While Plaintiffs claim this was a standstill, contradictory evidence demonstrates that everyone was allowing Mr. O'Connell the opportunity to get his loan current. Even still, the record is clear that his behavior does not rise to a serious objection as there were no raised voices, altercations, or physical objections by Mr. O'Connell in protest to the repossession.

Quite frankly, there appears to be more evidence in support of Defendants' that no breach occurred than in support of Plaintiffs. But, this merely demonstrates that there remains a question of material fact as to this issue. Because Plaintiffs fail to meet their burden to establish a breach of peace, they are not entitled to summary judgment as to their claims in Counts I and IV of the Complaint. For these reasons, Defendants respectfully request Plaintiffs Motion for Partial Summary Judgment be denied.

*/s/ Chastity R. Beyl*
Edward H. Stopher
Chastity R. Beyl
400 West Market Street, Suite 2300
Louisville, KY 40202
estopher@bsg-law.com
cbeyl@bsg-law.com
Phone: (502) 589-5980
Fax: (502) 561-9400
COUNSEL FOR DEFENDANTS,
PURSUIT, LLC and PRIMERITUS
FINANCIAL SERVICES, INC

## CERTIFICATE OF SERVICE

  I hereby certify that on this 25th day of September, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following CM/ECF participant:

Stefanie Ebbens Kingsley
STEFANIE EBBENS KINGSLEY LAW
100 N. Main Street, Suite 300
Corbin, Kentucky 40701
Phone: (606) 260-2565
Fax:  (606) 656-0805
Stefanie@sek-law.com
CO-COUNSEL FOR PLAINTIFFS
PATRICK J. AND JENNIFER O'CONNELL


James Craig
CRAIG HENRY PLC
239 South Fifth Street, Suite 1400
Louisville, Kentucky 40202
Phone:  (502) 614-5962
Fax:  (502) 614-5968
jcraig@craighenrylaw.com
CO-COUNSEL FOR PLAINTIFFS,
PATRICK J. AND JENNIFER O'CONNELL

Mark A. Osbourn
BUSH & OSBOURN, PLLC
9000 Wessex Place, Suite 200
Louisville, Kentucky 40222
Phone:  (502) 890-3139
Fax:  (502) 890-3861
mosbourn@bushosbourn.com
COUNSEL FOR DEFENDANTS AARON DANIELS
AND KYLE AUSTIN


            */s/ Chastity R. Beyl*
            COUNSEL FOR DEFENDANTS,
            PURSUIT, LLC and PRIMERITUS
            FINANCIAL SERVICES, INC.