UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| **PATRICK J. O'CONNELL,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | Case No. 3:17-CV-067-GFVT |
| ) | |
| v. ) | *Electronically Filed* |
| ) | |
| **PURSUIT, LLC,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

\* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Patrick and Jennifer O'Connell state the following in opposition to Defendants' Motion for Summary Judgment [DN #39]:

### I.   INTRODUCTION

Defendants' Motion for Summary Judgment completely ignores the crux of this case. Noticeably absent from Defendants' Memorandum is any reference to the fact that they injected law enforcement personnel into a civil matter while repossessing Plaintiffs' vehicle. By doing so, they violated Kentucky's self-help statute and the Fair Debt Collection Practices Act. *See*, *e.g.*, *First & Farmers Bank v. Henderson*, 763 S.W.2d 137, 141 (Ky. App. 1988) ("the statute makes it clear that a creditor runs the risk of serious liability if he proceeds with a self-help repossession when there is a serious objection by the debtor. If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession").

Rather than discussing this point, Defendants argue that several of the O'Connells' other claims fail. First, Defendants argue, notwithstanding the fact they called the police to steal the

O'Connells' vehicle, that Plaintiffs' Kentucky Consumer Protection Act claim fails because they were not in privity of contract with the Defendants. By making this argument, Defendants seek to take advantage of a loophole in the Act that was not intended for them and that this Court has been reluctant to apply in the past. *See Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 793 (W.D. Ky. 2003) (denying "a potential remedy simply because the consumer says he never intended to become a purchaser when, for all practical purposes he was treated as one, … would create an unintended loophole where individuals are treated like customers, yet denied KCPA's protections").

Second, Defendants argue that they cannot be held liable for conversion because they did not benefit by taking the O'Connells' property. But their argument ignores the fact that they were paid for taking the truck, which was certainly a benefit to Defendants, and that Mr. O'Connell testified in his deposition that Defendants burned half of a tank of fuel while the vehicle was in their possession. His testimony, standing alone, is sufficient to defeat Defendants' Motion.

Third, Defendants argue that the O'Connells cannot recover emotional distress damages. But Defendants' argument flies in the face of record evidence that supports recovery of those damages. Because that evidence is competent and admissible, the question of whether the O'Connells may recover such damages should be put to the jury. *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) (stating that a plaintiff's testimony, standing alone, is sufficient to defeat a motion for summary judgment even if that testimony is "somewhat vague").

Fourth, Defendants argue that the O'Connells are not entitled to punitive damages according to the "plain language" of KRS 355.9-609. But Defendants ignore the fact that Kentucky appellate courts have awarded such damages in the past. *See generally First &*

2

*Farmers Bank*, 763 S.W.2d at 137 (affirming award of punitive damages for violation of self-help statute).

Defendants are only entitled to summary judgment if they show "there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). In conducting its review, the Court must "draw all inferences in the light most favorable to the non-moving party—here," the O'Connells. *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). For the reasons that follow, Defendants cannot meet this burden.

## II.     FACTUAL BACKGROUND

The O'Connells previously filed a Motion for Summary Judgment, supporting Memorandum, and exhibits. *See generally* DN #41. They incorporate the Factual Background contained in that Memorandum here, by reference. They would like to supplement that background with the following facts, relevant to the damages sought in this action.

Specifically, Plaintiffs Jennifer O'Connell and Patrick O'Connell provided counsel for Defendants with extensive testimony regarding the damages that they suffered as a result of Defendants' conduct. Specifically, Ms. O'Connell has a history of anxiety problems. Those issues have been exacerbated by this case.

> Q.   Okay. Is there anything, any events or any triggers that seem to cause you to have worse anxiety than others -- than at other times?
>
> A.   Honestly at this point in my – stage of my life, every time I see a police officer.
>
> Q.   And why is that?

> A. After what Detective Gregory and Detective Starks did and -- did to my children and then after what Daniels and Clemmons and Austin did, I just can't -- I just can't look at an officer in uniform anymore and think that they're doing the general population any good.

Jennifer O'Connell Deposition, attached as Exhibit A, at 60 – 61. Her anxiety's symptoms can be debilitating:

> Q. What are the symptoms of your anxiety?
>
> A. You literally curl up in a corner and you shake and -- the closest thing I can describe it is you freak out. You can't comprehend. You can't distinguish reality from what's going on around you. You don't know what's real, what's not.
>
> Q. Okay.
>
> A. You don't know who to trust, panic attacks.
>
> Q. Okay.
>
> A. I had one in the middle of Kroger one time.

*Id.* at 61 – 62.

Unable to cope with these anxiety problems, she sought medical treatment for them following the repossession. Defendants take issue with the amount of time between the repossession and her treatment, but her testimony provided the causal link:

> Q. Okay. Now, you talked about you went to see Dr. Lewellen sometime in January, February, 2017 to try anti-anxiety medication again; is that right?
>
> A. Yes.
>
> Q. Did something happen during that time period that you felt like, I've got to get back on the medication?
>
> A. Well, after this repossession happened.
>
> Q. And this repossession happened in October 2016; right?

4

    A.    Yes.

    Q.    Okay. And you went to see Dr. Lewellen in January, February 2017.

    A.    Right.

*Id*. at 62 – 63.

Mr. O'Connell was similarly affected during the repossession, as Ms. O'Connell testified:

    Q.    Was Mr. O'Connell upset when you were speaking with him?

    A.    Absolutely.

    Q.    And how could you tell that he was upset?

    A.    Well -- I mean, I've been married to him for almost 19 years. I know the sound of his voice and I know when things bother him and I know when he stresses over stuff he tends to -- his mind tends to start going and he starts thinking and starts -- you know, how could they do this to me; how could they get away with this, that's illegal. And -- I mean, the cops showed up and knew it was illegal and still didn't do anything about it, just let them take it …

…

    A.    No. He sounded like he was in tears.

    Q.    When you discussed this later, did you ever see him cry over it or get upset over it?

    A.    He didn't cry but he was -- I mean, he was visibly upset. I mean, he -- he gets irritable, agitated, short. He can't settle down. He gets just -- he gets hard to deal with. I mean, it's not his fault. He just I want to say gets tunnel vision and just tries to figure out how this could happen and, of course, you know, we're dealing with the stress of the fact that by this point in time when I got home that evening SunTrust had already sent the release on the truck and we have no idea where it is, and knowing I guess a little bit about Ronnie and Robert, now I'm sitting here worried about who's out driving the truck around town because that's what they would do…

> ...
>
> A. They can't -- they cannot repossess a truck in that manner and try to intimidate and enforce it.
>
> Q. In your opinion, you're there, what did they do that intimidated you?
>
> A. Well, they can't try to block you in and -- you know, just in that general -- they just can't do that.

*Id*. at 94 – 95.

Patrick O'Connell Deposition, attached as Exhibit B, at 95, 166. Mr. O'Connell elaborated on his emotional distress damages claim, showing that his symptoms began right after Defendants' improper repossession:

> Q. As you were asked earlier -- or as was mentioned to you earlier, you've made claims in this lawsuit that you have suffered emotional distress and anxiety as a result of the matters complained of in your complaint; is that correct?
>
> A. Yes, sir.
>
> Q. When did those problems begin?
>
> A. Shortly after it happened. It was reoccurring -- you know, just having to deal with it all the time, just thinking about it. Even still, you know, when I think about it or when I see them I think about it and I just think how wrong what they did and everything -- just causes anxiety and stress and causes me to get mad.

*Id*. at 193 – 194. He described the symptoms as anger, irritation, and tension leading to complications with acid reflux disease:

> A. I mean, I guess first thing is I get mad. I get irritated; I get tense. Then I get -- and the more I do it causes my acid reflux to just get really bad and I get -- start getting nauseous and it's pretty much a downhill slide from there.
>
> …

6

Q. And is it your testimony as you sit here today that the symptoms of -- of emotional distress and anxiety continue to this day?

A. I still get pretty irritable about it, I mean, when I think about it and just what all happened, so, yeah, I'd say it's still -- I still -- even coming sitting here today and discussing this today and sitting here reading it, I just – you know, I can picture it all through my head and it irritates me. It's -- I mean, it causes me – like even eating lunch, I get so mad about it I just can't eat lunch, you know. It really upsets me about it.

Q. Have your symptoms gotten better or worse over time?

A. I'd just say it's the same. I can't really say. I don't...

Q. It has not gotten better with the passage of time?

A. No. I'm still pretty mad about it, upset about the whole deal.

Q. Are you just as upset as you sit here today as you were on October 25th of 2016?

A. Probably madder, to be honest with you.

...

A. Because it's gotten worse. The beginning of '17.

Q. When did you start taking medication for acid reflux?

A. The beginning of '17.

Q. Is that when you started having symptoms of acid reflux?

A. No. That's when it had really accumulated. I mean, it -- it was probably a couple of month span there before -- before that.

*Id*. at 195 – 196, 197.

7

In addition to the emotional distress damages that the O'Connells suffered, Mr. O'Connell testified about the use and enjoyment that Defendants received from his truck while it was in his possession.

> Q. Now, do you have any proof that Pursuit used your vehicle after it was repossessed for their personal use or business use?
>
> A. No.
>
> Q. You don't have any knowledge that, you know, Ronnie or Robert were out riding around in this truck?
>
> A. Someone drove it a whole lot further than their lots.
>
> Q. And why do you think that?
>
> A. It had a bunch more miles on it and they burned almost a half tank of fuel.

*Id*. at 174.

### III.   DISCUSSION

The evidence presented in the O'Connell's Motion for Summary Judgment and above is more than sufficient to present Plaintiffs' damages claims to a jury. Defendant can only prevail on their motion if "there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). Because the Court must "draw all inferences in the light most favorable to the non-moving party" the Defendants cannot meet this burden. *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### A.   The Defendants violated the Kentucky Consumer Protection Act.

Defendants misconstrue the Kentucky Consumer Protection Act's privity requirement to avoid liability. Yes, it is true that the "statute plainly contemplates an action by a purchaser

against his immediate seller." *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.,* 836 S.W.2d 907, 909 (Ky. App. 1992). But unlike the cases cited by Defendants, both Pursuit and Primeritus were hired directly by the O'Connells' immediate seller, Suntrust. Defendants acknowledge that Suntrust was the O'Connells' immediate seller. DN #39-1 at 16 ("Thus, Suntrust is the immediate seller of services to Plaintiffs"). And they concede that they were hired by Suntrust to conduct the repossession. *Id* at 1. ("Pursuit, LLC was contracted by Primeritus financial Services, Inc. to repossess the truck form Plaintiffs on behalf of Plaintiffs' lender, Suntrust Financial.").

Compare this case to the two opinions relied upon by Defendants. From pages thirteen through sixteen of Defendants' memorandum, Defendants discuss *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847 (W.D. Ky. 2007) and *Eversole v. EMC Mortg. Co.*, 2005 WL 3018755 (E.D. Ky., Nov. 9, 2005). In *Tallon*, a creditor assigned credit card debt to a third-party, who was later named as a defendant in a Kentucky Consumer Protection Act case. In *Eversole*, servicing rights for a loan were transferred to a third-party, who was later named as a defendant in a Kentucky Consumer Protection Act case. In both cases, the third-party assignee and transferee were acting on their own account when they engaged in conduct that allegedly violated the Act. In this case, the O'Connells do not allege that Defendants were Suntrust's assignee or transferee, or that they acted on their own account. Neither do Defendants. Rather, the O'Connells allege that Defendants were repossessing their vehicle on behalf of Suntrust and acting as its actual agent. And importantly, no Kentucky case has ever held that an actual agent cannot be held liable under the Kentucky Consumer Protection Act.

The closest such discussion in any Kentucky case arises in *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538 (Ky. App. 2013). In *Keaton*, the plaintiff brought a KCPA

claim against G.C. Williams, a funeral home company, for a burial that went awry. But the plaintiff's family had entered a contract with a cemetery, Green Meadows, and not the funeral home. Green Meadows had in turn subcontracted with G.C. Williams for the burial. The Court affirmed dismissal because "claims may only be brought under the KCPA by individuals who personally purchase goods or services from a merchant." *Id*. at 546. The plaintiffs had pursued an apparent or ostensible agency theory against the defendants. *Id*. The Court did not expressly state that a KCPA claim cannot be brought against an apparent or ostensible agent; instead, the Court merely stated that as Green Meadows' subcontractor, such a claim could not be brought against G.C. Williams.

Thus, there is no clear direction from any Kentucky appellate court stating whether an apparent or ostensible agent might be liable under the KCPA. An apparent or ostensible agent "is not an actual agent, but is 'one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him.'" *Rains v. St. Joseph Healthcare, Inc.*, 2012 Ky. App. Unpub. LEXIS 671, *5-6 (Ky. App. Sept. 21, 2012) (quoting *Middleton v. Frances*, 257 Ky. 42, 44, 77 S.W.2d 425, 426 (1934)). And there is certainly no clear authority suggesting that an immediate seller's actual agent is not liable. An actual agent is one who "has actual authority to take action designated or implied in the principal's manifestations to the agent and acts necessary and incidental to achieving the principal's objectives …." *Ping v. Beverly Enters.*, 376 S.W.3d 581, 592 (Ky. 2012) (quoting *Restatement (Third) of Agency* § 2.02 (2006)). An actual agent, when performing work on behalf of its principal, acts in the principal's shoes. And with respect to KRS 367.220, should be treated as the "immediate seller" for purposes of the Kentucky Consumer Protection Act.

10

By failing to apply the Act to actual agents, Defendants' proposed strict interpretation of the privity requirement defeats the Kentucky Consumer Protection Act's "purpose to afford the consuming public protection against unscrupulous business practices." *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 793 (W.D. Ky. 2003). The Western District's decision in *Stafford* is illustrative. In *Stafford*, the plaintiffs brought a KCPA claim against a bank, alleging that the bank was trying to enforce a credit card procured through identity theft. The bank argued that the KCPA claim should be dismissed because the plaintiff "vigorously denie[d] ever entering into a contractual relationship with the Bank." The Court stated that the Bank's own continued assumption of privity, coupled with its alleged unfair, false, and misleading tactics, is enough to overcome" the privity requirement." *Id*. This was so because "Kentucky's highest court has noted, 'the Kentucky legislature created a statute which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts.'" *Id*. (citing *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988)). By denying "a potential remedy simply because the consumer says he never intended to become a purchaser when, for all practical purposes he was treated as one, would … would create an unintended loophole where individuals are treated like customers, yet denied KCPA's protections. The Court declines to adopt such an approach." *Id*.

Here, by denying application of the KCPA to Defendants, the Court would be creating the same loophole cautioned by the *Stafford* Court. If a business's actual agents cannot be held liable under the Act, the statute's purpose to protect "against unscrupulous business practices" would be gutted. *Id*. To prevent application to Defendants, parties with the most direct contact with the buyer upon repossession, and limit it to Suntrust would thwart the broad protections of the Kentucky Consumer Protection Act on the technicality that Pursuit did not sign the contract,

11

but had only been assigned it for the purposes of collection, and enforcement of the security interest held by Suntrust. Defendants' Motion should be denied.

      **B.**      **The Defendants converted the O'Connells' property.**

Defendants repossessed the O'Connells' property and held it for more than twenty-four hours, and they were paid for doing so, both by Suntrust and the borrower. They do not deny any of this. And yet, they contend that they cannot be held liable for conversion because the O'Connells have not proved they benefited from the conversion.

But again, Defendants ignore evidence presented by the O'Connells in making this argument. At his deposition, Mr. O'Connell testified that the Defendants used and benefitted from his property while it was in their possession.

> Q. Now, do you have any proof that Pursuit used your vehicle after it was repossessed for their personal use or business use?
>
> A. No.
>
> Q. You don't have any knowledge that, you know, Ronnie or Robert were out riding around in this truck?
>
> A. Someone drove it a whole lot further than their lots.
>
> Q. And why do you think that?
>
> A. It had a bunch more miles on it and they burned almost a half tank of fuel.

*Id*. at 174. Though Mr. O'Connell states in this section of his deposition that he does not have "proof" Defendants benefited from their use of the truck, he also testifies clearly that the truck had "a bunch more miles on it," and that Defendants "burned almost a half tank of fuel." This, on its own, is enough to meet the O'Connells' burden under Rule 56(c)(1)(A) to show that this issue is genuinely disputed. Moreover, Defendants also ignore completely the fact that they were paid

by Suntrust to perform this repossession, and paid $150 by the O'Connells upon release of the truck. The Defendants were compensated for this conversion, and that compensation was an earned benefit for their actions.

Drawing "all inferences in the light most favorable to the non-moving party," the Court should deny Defendants' Motion. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### C. The O'Connells are entitled to emotional distress damages.

Ignoring more recent, published, and controlling authority, Defendants argue that the O'Connells cannot recover emotional distress damages. Citing *Breed v. Nationwide Ins. Co.*, 2007 U.S. Dist. LEXIS 30714, *7-8 (W.D. Ky. Apr. 24, 2007), Defendants argue that the O'Connells' testimony regarding their emotional distress damages is insufficient to recover them. But the Court in *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) made clear that Plaintiff's testimony, standing alone, is sufficient to defeat a motion for summary judgment. In fact, even "somewhat vague" testimony is enough to defeat a motion. The Sixth Circuit, remarking on the quality of evidence needed to submit an issue to the jury, stated that "whether [plaintiff's] testimony is credible is a separate consideration that is inappropriate to resolve at the summary judgment." *Id*.

Even if the Court were to evaluate the O'Connells' testimony based on the pre-*Moran* decision in *Breed v. Nationwide Ins. Co.*, 2007 U.S. Dist. LEXIS 30714, *7-8, 2007 WL 1231558, Defendants' Motion should be denied. In *Breed*, the Western District stated in an unpublished opinion that a plaintiff's testimony must provide "reasonable detail and cannot simply rely on conclusory statements," as opposed to the "somewhat vague" testimony discussed in Moran." But the O'Connells' testimony does provide "reasonable detail."

13

Indeed, the detail provided by the O'Connells shows how traumatizing this police-standoff was. Ms. O'Connell described her panic attacks as "curl[ing] up in a corner," "shak[ing]," and "freak[ing] out." Ex. A at 61. The repossession forced her to resume anxiety medication. *Id*. at 63. She described Mr. O'Connell's response: "he was visibly upset. I mean, he -- he gets irritable, agitated, short." *Id*. at 95. Even on the day of his deposition. Mr. O'Connell was not able to eat lunch:

> Q. And is it your testimony as you sit here today that the symptoms of -- of emotional distress and anxiety continue to this day?
>
> A. I still get pretty irritable about it, I mean, when I think about it and just what all happened, so, yeah, I'd say it's still -- I still -- even coming sitting here today and discussing this today and sitting here reading it, I just – you know, I can picture it all through my head and it irritates me. It's -- I mean, it causes me – like even eating lunch, I get so mad about it I just can't eat lunch, you know.

Ex. B at 195.

In *Moran*, the Defendant argued that plaintiff's testimony was "'self-serving' and therefore should not be considered by the court.'" The Court overruled that argument and stated that "a plaintiff's testimony is sufficient to create a genuine issue of material fact regardless of the evidence being self-serving." *Id*. The O'Connells' testimony, as outlined above and in their Motion, is not "self-serving." The testimony shows genuine, compensable injuries that they should be allowed to submit to a jury. Because the O'Connells have provided sufficient evidence for the case to go to a jury, Defendants' Motion should be denied.

      **D.    The O'Connells are entitled to punitive damages.**

In *First & Farmers Bank v. Henderson*, 763 S.W.2d 137, 142 (Ky. App. 1988), the Court affirmed an award of punitive damages in favor of plaintiff for a violation of KRS 355.9-609.

14

Defendants argue that "no punitive damages are recoverable for a violation of the Kentucky UCC." DN #39-1 at 27. But that statement is directly contradicted by *Henderson*.

In *Henderson*, a bank "informally requested that the Pulaski County Sheriff's Department have one of its deputies stand by on the scene" during a repossession under the UCC. The Deputy was "in full uniform, carrying his weapon, and in a marked car" during the repossession. As a matter of law, the Court concluded that the repossession violated the UCC and, because "it was established that the Bank had violated KRS 355.9-503[1], [plaintiff] was entitled to damages suffered as a result." *Id*. at 142. In the very next sentence, the Court held that the plaintiff would be entitled to punitive damages if he proved that the defendant's conduct was sufficiently egregious. *Id*.

The same happened here. Defendants called the police before the repossession began. The repossession would have never been completed but for the involvement of law enforcement, who appeared to assist Defenants in "in full uniform, carrying [their] weapon[s], and in a marked car." *Id*. This conduct, which was against their companies' policies, CARS recommendations, and in derivation of established Kentucky precedent, supports the award of punitive damages. And whether or not the evidence is sufficient to find maliciousness, willfulness, or "such a wonton disregard for the rights of others as from which it may be assumed the act was malicious or willful" is a question of fact to be determined by the trier of fact. *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001). For the reasons stated in *Henderson*, Plaintiffs should be allowed to submit their claim for punitive damages to the jury. Defendants' Motion should be denied.

---

[1] KRS 355.9-503 has been renumbered to KRS 355.9-609, but not substantively changed.

15

## IV. CONCLUSION

The evidence presented in the O'Connells' Motion for Summary Judgment combined with the evidence presented above is more than sufficient to present their claims to the jury. The O'Connells request that the Court deny Defendants' Motion for Summary Judgment.

    Respectfully submitted,

    CRAIG HENRY PLC
    James Craig

    s/ James Craig
    239 South Fifth Street, Suite 1400
    Louisville, KY 40202
    Telephone: (502) 614-5962
    Facsimile: (502) 614-5968
    jcraig@craighenrylaw.com

    and

    KINGSLEY & BLACHOWSKI
    Stefanie Ebbens Kingsley

    s/ Stefanie Ebbens Kingsley
    100 N. Main Street, Suite 300
    Corbin, KY 40701
    Telephone: (606) 260-2565
    Facsimile: (505) 656-0805
    Stefanie@sek-law.com

    *Co-Counsel for Patrick and Jennifer O'Connell*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served by operation of the Court's ECF/CM system on this 25th day of September 2018 upon:

Edward H. Stopher
Chastity R. Beyl
Boehl Stopher & Graves, LLP
400 West Market Street, Suite 2300
Louisville, Kentucky 40202
Telephone: (502) 589-5980
Facsimile: (502) 561-9400
estopher@bsg-law.com
cbeyl@bsg-law.com

*Counsel for Pursuit, LLC and
Primeritus Financial Services, Inc.*

                                              s/ James Craig
                                              *Co-counsel for Patrick and Jennifer O'Connell*