UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

PATRICK J. O'CONNELL, *et al.*,  )
                                )
      Plaintiffs,                 )       Civil No. 3:17-cv-00067-GFVT
                                )
V.                                )
                                )       **MEMORANDUM OPINION**
PURSUIT, LLC, *et al.*,        )                      **&**
                                )       **ORDER**
      Defendants.              )
                                )

*** *** *** ***

**I**

The O'Connells allege that their ownership of their dream vehicle, a 2011 Ford F-450 Super Duty truck, turned into a nightmare. [R. 41-1.] Like most vehicle buyers, they financed their purchase with a bank loan. *Id.* But the O'Connells were unable to stay current on their obligations. [R. 39-1; R. 41-1.] This caused their lender, SunTrust, to seek repossession of the truck. With that goal in mind SunTrust hired Defendant Primeritus, which in turn subcontracted the job out to Defendant Pursuit, LLC. [R. 41-1 at 3.]

While out on other business, Pursuit employees spotted the O'Connell's truck at O'Reilly Auto Parts. *Id.* at 4. Knowing that they had an outstanding order for repossession, they sprang into action. *Id.* at 5. But before the employees went to the O'Reilly Auto Parts parking lot, they contacted a member of the police department to join them. *Id.* Shortly after arriving, Pursuit requested Mr. O'Connell turn over the truck—he refused. *Id.* So, began the stand-off that lasted more than a half-an-hour. *Id.* at 1. At no point during this exchange was a police officer not

present. *Id.* at 6-10. Indeed, at times the police officers interacted with both Mr. O'Connell and Pursuit employees. *Id.*

Finally, Mr. O'Connell relented. *Id.* at 10. From that point, Pursuit alleges that they drove the truck to a storage lot for safe-keeping. [R. 39-1 at 4.] Impossible, Mr. O'Connell claims. In addition to significant damage to the truck, Mr. O'Connell says the truck was returned with a "bunch more miles on it" and half the tank of fuel missing. *Id.* at 6.

As a result of the repossession, the O'Connells sued. [R. 1.] They claim that the repossession violated federal and Kentucky law, including: (i) the Fair Debt Collection Practices Act, (ii) Negligence Per Se, (iii), the Kentucky Consumer Protection Act, and (iv) Kentucky's tort for conversion. *Id.* And, as a result of these violations the O'Connells argue they are entitled to statutory, emotional, and punitive damages. *Id.* The Defendants moved for summary judgment on the O'Connell's claims for violation of the KCPA and the tort of conversion; this same motion also moved to dismiss the O'Connell's request for emotional and punitive damages. [R. 39.] A day later, the O'Connells moved for summary judgment on their FDCPA and Negligence Per Se claims. [R. 41.] Both motions for Partial Summary Judgment are **GRANTED** for the reasons outlined below.

## II

### A

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows

'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F.Supp.2d 577, 582 (E.D.Ky.2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir.2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Once the movant has satisfied this burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). In making this determination, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 Fed.Appx. 450, 452 (6th Cir.2013).

All of the claims presented, including the sole federal claim, rely on Kentucky substantive law. Nonetheless, federal procedural law will govern as applicable, including in

3

establishing the appropriate summary judgment standard. *Weaver v. Caldwell Tanks, Inc.*, 190 Fed.Appx. 404, 408 (6th Cir. 2006).

**B**

The O'Connell's FDCPA and Negligence Per Se claims do not stand on their own. Instead, Mr. and Mrs. O'Connell must show that the Defendants' repossession of their truck violated the Kentucky law. In Kentucky, KRS 355.9-609 provides the limitations on how a secured party may seek to repossess collateral. Therefore, the Court begins its analysis by determining whether the Defendants' conduct in the O'Reilly Auto Parts parking lot was proscribed by KRS 355.9-609.

**1**

A secured party's rights are not unlimited. KRS 355.9-609. If they wish to repossess collateral, then they can proceed in one of two ways—with or without judicial process. *Id.* It is undisputed that the Defendants elected to do the latter. Proceeding without judicial process comes with a risk though—a repossessor cannot breach the peace. KRS 355.9-609. One way a secured party can breach the peace is by enlisting the assistance of law enforcement without judicial approval. While the mere presence of an officer is not considered law enforcement assistance, even limited involvement by an officer is. *First & Farmers Bank v. Henderson*, 763 S.W.2d 137 (Ky. App. 1988); *but see Waisner v. Jones*, 755 P.2d 598, 602 (N.M. 1988) (holding that "mere presence of the official, without more, is sufficient to chill the legitimate exercise of the defaulting party's right").

Peace is breached whenever there is an association between law enforcement and the repossessors without judicial approval. *Henderson*, 763 S.W.2d at 137. In *Henderson*, for example, the agents of a bank informally requested a sheriff's deputy be present for a planned

repossession. *Id.* The deputy obliged and arrived on location in a marked car wearing a full uniform and carrying his weapon. *Id.* After demands that the borrower turn over the property were rebuffed, the deputy stepped forward. Whether the deputy played a passive or active role, by affirming the repossessor's rights, was hotly contested. *Id.* But it matters not. The creditors involvement of law enforcement, even if the involvement was limited, breached the peace. This stems from the belief that law enforcement involvement acts to chill a borrower's ability to lawfully contest a repossession. *Hensley v. Gassman*, 693 F.3d 681, 689-690 (6th Cir. 2012) (holding that minor involvement of law enforcement renders the judicial process superfluous); *cf. United States v. Coleman*, 628 F.2d 961 (6th Cir. 1980) (repossession not wrongful when "police officers observed from a vantage point down the street and around the corner from the defaulting party's residence").

Pursuit's repossession of the O'Connell's truck followed a similar script to that of the repossession of *Henderson*'s boat. 763 S.W.2d at 137. Law enforcement was on the scene from the beginning to the finish of the repossession. [R. 47 at 7.] And, law enforcement directly involved itself in the repossession by interacting with both Mr. O'Connell and Pursuit employees. *Id.* Whether law enforcement confirmed Pursuit's rights to repossess the truck is inconsequential. Nor, does the Court need to answer the question of whether law enforcements participation was the but-for cause of Mr. O'Connell surrendering his truck. Instead, the court only asks if law enforcements connection gives <u>any</u> impression that the state is involved in the repossession. Here, the answer is yes. As a result, the Defendants repossession of the O'Connell's truck breached KRS 355.9-609.

**2**

The Defendants' violation of KRS 355.9-609 triggers liability for damages under both the FDCPA and Kentucky's Negligence Per Se statute. This is because the FDCPA determines whether a repossession was illegal by looking at the relevant state law. *Alexander v. Blackhawk Recovery & Investigation, L.L.C.*, 731 F.Supp.2d 674, 679 (E.D.Mich.2010). Here, of course, the Court has determined the Defendants violated that Kentucky law by breaching the peace when they repossessed the vehicle. By that same token, Kentucky provides a private right of action for a violation of that same statute. *Hargis v. Baize*, 168 S.W.3d 36, 40-41 (Ky. 2005); *Henderson*, 763 S.W.2d at 139. Therefore, the O'Connells are entitled to damages to be determined at trial.

**C**

The Kentucky Consumer Protection Act provides protection for customers who purchase goods or services by barring "unfair, false, misleading, or deceptive acts or practices." KRS 367.170. The KCPA gives teeth to its protections by allowing consumers to sue violators of those provisions. KRS 367.220(1). But the ability to sue is not unlimited and requires "privity of contract" between the consumer and the provider of the goods or services. *Skilcraft Sheetmetal v. Ky. Machinery, Inc.*, 836 S.W.2d 907, 909 (Ky. App. 1992); *Eversole v. EMC Mortg. Corp.*, 2005 WL 3018755 (E.D. Ky. 2005) (holding that plaintiff could not sue a subsequent loan servicer because there was no privity of contract); *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538 (Ky. App. 2013) (holding that a customer could not sue a sub-contractor because they were not in privity with the sub-contractor the sub-contractor). The O'Connells were not in privity with Pursuit or Primeritus. They did not purchase goods or

services from either Defendant. [R. 39-1 at 16.] Nor did they enter into a contract with Pursuit or Primeritus. *Id.* Therefore, the O'Connells do not have standing to pursue a KCPA claim.

Nonetheless, the O'Connells allege their KCPA claim must persist. To muster support, they point to a single case involving a consumer who incurred significant debt from identity theft. *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776 (W.D.Ky. 2003). There, the consumer argued that the debt was invalid because no contract was formed. *Id.* In response, the bank used that argument to move for dismissal of the KCPA claim. The argument was simple. If there was no contract, then there was no privity. *Id.* And, if there was no privity, then there could be no KCPA claim. The court disagreed. *Id.* Since the bank wanted to enforce the debt as if a contract was formed, it was forced to take the bitter with the sweet. *Id.* This is not one of those extraordinary cases. The Defendants do not assert a contract against the O'Connells. Therefore, simple application of the privity rule will suffice and the O'Connell's KCPA claim must be dismissed.

**D**

Kentucky common law provides a tort action for conversion to prevent illegitimate takings of property. The O'Connells contend the Defendants committed this tort when they repossessed their truck. To establish a claim for conversion the O'Connells must show that: (1) they had legal title to the converted property; (2) they had the right to possess the property at the time of the conversion; (3) the defendant exercised dominion over their property in a way that deprived them of its use and enjoyment and the defendant used the property for his own beneficial; (4) the defendant intended to interfere with their possession; (5) they demanded return of the property and the defendant refused; (6) the defendant's act was the legal cause of the their loss of the property; and (7) they suffered damages from the loss of the property. *Kentucky Ass'n*

*of Ctys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 n. 12 (Ky. 2005). The Defendants allege that the O'Connell's claim fails because they do not prove Pursuit beneficially enjoyed the truck. [R. 39-1 at 17-19.] The Court agrees. Other than standalone accusations, the O'Connells have provided no evidence of beneficial use by the Defendants. Since each element must be proven, the Court does not need to reach the Defendants' other claim that there were no damages.

A plaintiff must present more than bare evidence to successfully prove that a defendant beneficially enjoyed her property. *Meogrossi v. Aubrey*, 2011 WL 1235063 (W.D.Ky. 2011). In *Meogrossi*, the defendant police officer illegally confiscated the plaintiff's tickets to the Kentucky Derby. *Id.* at 3. And, perhaps curiously, the officer could not provide evidence that the tickets were entered into evidence or destroyed. *Id.* at 4. The plaintiff pounced on this irregularity to claim that the defendant must have used or sold the tickets himself. *Id.* But mere suspicion alone is not enough. *Id.* at 14. The court held that verifying evidence in the form of testimony or payroll evidence was needed. *Id.* Similarly, the O'Connell's self-serving assertions about fuel usage and miles on the odometer are unavailing. Mr. and Mrs. O'Connell must present some corroborating evidence—they present none.

In the alternative, the O'Connells urge that the compensation paid to the Defendants should satisfy the requirement for beneficial enjoyment. The plain language of the Kentucky test, however, indicates the opposite. By its terms, the defendant must gain beneficial enjoyment of the property itself. Collecting compensation for repossessing a vehicle does not do.

# E

The Defendants claim the O'Connells seek too much because emotional and punitive damages are unavailable to the O'Connells in this case. The Court agrees and explains both in turn.

## 1

While a plaintiff's testimony standing alone can prove emotional damages, it must consist of more than conclusory statements. *Bach v. First Union Nat'l Bank*, 149 Fed.Appx. 354, 361-62 (6th Cir. 2005). The testimony should explain the circumstances of the plaintiff's injury in reasonable detail. *Id.* This stricter standard of proof is required because emotional damages are "so easy to manufacture." *Breed v. Nationwide Ins. Co.*, 2007 WL 1231558, *3 (W.D. Ky. 2007).[1] Neither Mr. nor Mrs. O'Connell has expressed the circumstances of their alleged injuries in reasonable detail. What is more, the medical records directly contradict each of their testimonies. And, the summary judgement standard does not demand the Court turn a blind eye to these inconsistencies.

Reasonable detail generally requires a showing of cause and effect between the defendant's actions and the harm experienced with some degree of specificity. For example, an elderly grandmother alleged that having her second mortgage improperly denied put her at physical risk. To that point, she claimed the denial threatened to block her access to her caretaker shortly after suffering a stroke. *Bach*, 149 Fed.Appx. at 361-362. In effect, the plaintiff alleged that the defendant's violation isolated her at her greatest time of need. *Id.* Therefore, the plaintiff's feeling of "despara[tion]," "embarrass[ment]," and anger were

---

[1] The O'Connells incorrectly claim that this heightened standard was overruled by Moran v. Al Basit LLC 788 F.3d 201 (6th Cir. 2015). That case involved a Fair Labor Standards Act claim and did not include a request for emotional damages. What is more, the FLSA expressly places a heightened burden of proof on the employer.

reasonably tied to the defendant's alleged violation. In similar fashion, the plaintiff in *Smith* could point to specific instances of harm from the defendant's allegedly incorrect background check, including being called the "favorite felon" of a party store owner. *Smith v. LexisNexis Screening Solutions, Inc.*, 837 F. 3d 604, 611 (6th Cir. 2016). The plaintiff's experience was so inherently degrading that a reasonable jury could infer emotional distress caused by immense shame, anger, and stress. *Id.* In contrast, broad statements about injuries caused by emotional harm that do not directly tie to the defendant's violation with some specificity will be insufficient. *Breed v. Nationwide Ins. Co.*, 2007 WL 1231558, *3 (W.D.Ky. 2007); *see also Tallon v. Lloyd & McDaniel*, 497 F.Supp.2d 847 (W.D.Ky. 2007) (holding a plaintiff's affidavit that he suffered loss of sleep as a result of the embarrassment and humiliation he felt was not enough).

Both O'Connells claim that the repossession has left them with emotional trauma which has caused them to seek medical care. [R. 48.] For Mrs. O'Connell the trauma is the anxiety she experiences whenever she sees police officers or people become confrontational. *Id.* And for Mr. O'Connell it is the feelings of anger and irritation he feels when he thinks of the incident or sees officers. *Id.* Neither of these claims contain the necessary specificity to support emotional damages. Unlike *Smith,* the O'Connells have been unable to highlight an event that was so inherently degrading caused by the Defendants conduct that it could back an award for emotional damages.

What is more, the medical record belies the O'Connell's claims. Mrs. O'Connell, for example, received more care for her panic attacks prior to the repossession. [R. 39-1 at 23.] She allowed her prescription to lapse for over two months after the repossession. *Id.* And, when Mrs. O'Connell finally decided to refill it, there was nary a mention of the repossession. *Id.* Mr.

O'Connell's medical record similarly betrays him. The medication he now complains of taking is the exact dose he took before the repossession. *Id.* at 24-25. Even if the Court could ignore the lack of specificity of the O'Connell's claims, the contradictory medical record undermines any claim to emotional damages.

2

A plaintiff who prevails on a claim that KRS 355.9-609 has been violated is only entitled to compensatory damages. In other words, a plaintiff can only collect "in the amount caused by a failure to comply" with the statute. KRS 355.9-625(2). Punitive damages, which are about deterring conduct, are unavailable.

The O'Connell's reliance on *Henderson* is misplaced. 763 S.W.2d at 137. At the time *Henderson* was decided no remedy was outlined for violations of KRS 355.9-609's predecessor KRS 355.9-507. That changed with the codification of KRS 355.9-609. As a result, punitive damages are only be available if the legislature specifically provides them as a remedy. *Jackson v. Tullar*, 285 S.W.3d 290, 298 (Ky. App. 2007). And, they did not.

III.

For the foregoing reasons, and being otherwise sufficiently advised, the Court hereby **ORDERS**:

1. Defendants' Motion for Partial Summary Judgment [R. 39] is **GRANTED**;

2. Plaintiffs' Motion for Partial Summary Judgment [R. 41] is **GRANTED.**

This the 5th day of February, 2019.

Gregory F. Van Tatenhove
United States District Judge